IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
_____
                                  :
UNITED STATES OF AMERICA          :
                                  :
       v.                         :        Criminal No. 11-520 (JBS)
                                  :
THOMAS REEVES                     :
TODD REEVES                       :        **OPINION**
RENEE REEVES                      :
SHELLROCK, LLC                    :
KENNETH W. BAILEY                 :
MARK BRYAN                        :
PAMELA MELONEY                    :
HARBOR HOUSE, INC.,               :
                                  :
              Defendants.         :
_____:
```

APPEARANCES:

Patrick M. Duggan, Esq. (argued)
Wayne D. Hettenbach, Esq. (argued)
U.S. DEPARTMENT OF JUSTICE
ENVIRONMENTAL CRIMES SECTION
P.O. Box 23985
Washington, D.C. 20026
     and
Matthew T. Smith, Assistant United States Attorney
OFFICE OF THE U.S. ATTORNEY
District of New Jersey
Camden Federal Building & Courthouse
401 Market Street, 4th Floor
Camden, NJ 08101
     Attorneys for the United States of America

William J. Hughes, Jr., Esq. (argued)
COOPER, LEVENSON, APRIL, NIEDELMAN & WAGENHEIM, PA
1125 Atlantic Avenue
3rd Floor
Atlantic City, NJ 08401
     Attorney for Defendant Thomas Reeves
     Co-Counsel for Defendant Shellrock, LLC

Edwin J. Jacobs, Jr., Esq.
Michael F. Myers, Esq. (argued)
JACOBS & BARBONE
1125 Pacific Avenue
Atlantic City, NJ 08401
    Attorney for Defendant Todd Reeves
    Co-Counsel for Defendant Shellrock, LLC

Alois Harold Kokes, Esq. (argued)
728 West Avenue
Suite S201
Ocean City, NJ 08226
    Attorney for Defendant Renee Reeves

John S. Furlong, Esq. (argued)
FURLONG & KRASNY, ESQS.
Mountain View Office Park
820 Bear Tavern Road
Suite 304
West Trenton, NJ 08628
    Attorney for Defendant Mark Bryan

Justin T. Loughry, Esq. (argued)
Lawrence W. Lindsay, Esq.
LOUGHRY & LINDSAY, LLC
330 Market Street
Camden, NJ 08102
    Attorneys for Defendant Pamela Meloney

Kevin P. McCann, Esq.
Beth Ann Hellriegel White, Esq. (argued)
CHANCE & MCCANN LLC
201 W. Commerce St.
P.O. Box 278
Bridgeton, NJ 08302
    Attorneys for Defendant Kenneth Bailey

**SIMANDLE**, Chief Judge:

## I.  INTRODUCTION

     This matter is before the Court on several motions to

suppress filed by multiple defendants.  In addition to

determining whether a business owner and an employee have

2

standing to challenge the search of the employee's workplace computer, the principal issue is whether a federal agent, searching computer files pursuant to a warrant limiting the search to certain "records, electronic or hard copy, from January 1, 2007 through December 31, 2007," properly searched and seized documents from 2003 and 2004 located in the computer's files.

First, Defendants Todd Reeves and Shellrock, LLC filed a motion to suppress all pre-2007 documents seized from Todd Reeves' home and Shellrock, LLC's premises [Docket Item 122]. This motion was joined by Defendant Renee Reeves [Docket Item 124] and Defendant Thomas Reeves [Docket Item 123]. These defendants argue the government exceeded the scope of their warrant which limited their search to oyster records from January 1, 2007 to December 31, 2007 only. Neither the search warrants nor the recently produced search warrant affidavits contain any reference to any alleged crime pre-dating the 2007 oyster season. Therefore, these defendants argue the government's seizure of pre-2007 documents during the execution of this search warrant was without probable cause, beyond the scope of the warrant and therefore unreasonable.

Defendants Mark Bryan and Harbor House, LLC, filed a second motion to suppress alleging similar arguments [Docket Item 127]. This motion was joined by Defendant Pamela Meloney [Docket Item 129] and Defendant Kenneth Bailey [Docket Item 130]. Defendants

Bryan and Harbor House move to suppress all pre-2007 documents seized from the Harbor House premises and Harbor House computers and also move to suppress all electronic documents seized by the government during the execution of the search warrant. First, Defendants Bryan and Harbor House argue the affidavit to the search warrant does not support a finding of probable cause for the government to search Harbor House's computers. Second, Defendants Bryan and Harbor House argue that any pre-2007 documents seized from the Harbor House premises or computers must be suppressed as these documents were beyond the scope of the warrant.

The government opposed both sets of motions and the Court convened the suppression hearing and heard oral argument on April 24, 2012. Several of these motions were resolved at the hearing.[1]

---

[1] During oral argument, it was conceded on the record that several of these motions were moot and should be dismissed. Specifically, Defendants Todd Reeves and Shellrock, LLC's motion to suppress [Docket Item 122] was found to be moot since the government conceded that no pre-2007 documents seized from Reeves or Shellrock, LLC would be offered into evidence against these defendants. Accordingly, Defendant Renee Reeves and Defendant Thomas Reeves' motion to join this motion to suppress were also dismissed as moot.

In addition, Defendant Bailey conceded at oral argument that he does not have standing to challenge the search conducted on Harbor House's premises as he merely conducts business with Harbor House and is not an employee of the corporation and does not maintain a workspace on the premises. Therefore, Defendant Bailey's motion to join Defendants Mark Bryan and Harbor House's motion to suppress [Docket Item 130] was denied for lack of standing.

The only motion remaining after oral argument is Defendants Bryan and Harbor House's motion to suppress which was joined by Defendant Meloney, and the suppression of only two pre-2007 documents seized from Meloney's work computer at Harbor House's office is at issue, as these are the only two documents pre-dating 2007 seized from the Harbor House office that the government seeks to use at trial.  The court reserved decision and now decides the matter.

## II.  BACKGROUND

The instant criminal action involves an alleged conspiracy to violate the Lacey Act and obstruct justice.  These charges are based on the alleged over-harvesting of oysters and falsification of records regarding oysters sales.  Multiple Defendants are charged including Thomas Reeves, Todd Reeves, Renee Reeves, Shellrock, LLC, Kenneth W. Bailey, Mark Bryan, Pamela Meloney and Harbor House, Inc.

These defendants have intertwined relationships.  Thomas Reeves and Todd Reeves are brothers.  Both brothers are 50% co-owners of Shellrock, LLC.  Renee Reeves is the wife of Todd Reeves.  Mark Bryan is one of the owners and operators of Harbor House, Inc.  Pamela Meloney is an employee of Harbor House.

During oral argument on the previous pretrial motions on March 16, 2012, it was made known to the court that the government had not disclosed the search warrant affidavits to the

Defendants prior to the deadline for filing pretrial motions. Due to this late disclosure, the court granted the Defendants leave to file additional motions to suppress based on these affidavits as long as these motions were filed no later than April 5, 2012. [Docket Item 120.] In addition, the government was instructed to file a bill of particulars detailing the Harvest Date and Number of Bushels for each occasion alluded to in Count I.

The government filed its bill of particulars of which 19 of the 27 overt acts in Count I are based on harvest dates prior to 2007. The remaining 8 overt acts in Count I are based on harvest dates in 2007. [Docket Item 121.]

As discussed above, the only remaining motion before the court is Defendants Bryan and Harbor House's motion to suppress [Docket Item 127] which Defendant Pamela Meloney joined [Docket Item 129]. For the reasons discussed herein, the court finds that Defendant Pamela Meloney's motion to join should be granted as she has standing to challenge the search warrant executed on her harbor House computer.

During oral argument, the government maintained that only two pre-2007 documents seized pursuant to the Harbor House search warrant were being offered in the government's case in chief against Bryan, Meloney and Harbor House. Both of these documents were found during the government's search of Meloney's computer

in her workspace at Harbor House.  They are entitled "Book 1.xls" and "Reeves Bros.xls."  (Gov't Exs. 2 and 3.)  "Book 1.xls" was created on December 17, 2003, was last modified on May 14, 2004 and last accessed on February 3, 2009.  (Gov't Ex. 2.).  "Reeves Bros.xls" was created on May 14, 2004, was last modified on May 14, 2004 and last accessed on February 3, 2009.  (Gov't Ex. 3.) Both documents contain the purchase date, harvest date, bushel quantity and cost for oyster purchases from the Reeves Brothers in April 2004 and May 2004 respectively. (Gov't Exs. 2 and 3.) Both documents were retrieved from the "My Documents" folder on Pamela Meloney's computer on her desk.

For the reasons discussed below, the Court concludes that probable cause existed to search Harbor House's electronic documents as well as the paper documents contained on the premises.  However, the court finds that the search of the Harbor House computers exceeded the scope of the warrant without reasonable precautions to confine the computer search within that scope and was therefore unreasonable.  Therefore, the Court concludes it is appropriate to suppress the pre-2007 documents recovered from the Harbor House computers.

## III.  DISCUSSION

### A.  Summary of the Arguments

Defendants Mark Bryan and Harbor House, Inc., argue that all pre-2007 documentary evidence seized from the premises of Harbor

7

House, Inc. should be suppressed as beyond the scope of the search warrant.  Defendants Mark Bryan and Harbor House, Inc. argue that the search warrant in this case authorized the seizure of records for 2007 only and despite the warrant's limited scope, the government seized documents from Harbor House dating back to 2004.

These defendants also argue that all electronic evidence seized from the premises of Harbor House, Inc., should be suppressed because the search warrant affidavit lacked sufficient facts to support a finding of probable cause.  The defendants argue the search warrant affidavit describes a business which relies on paper records and handwritten reports.  The only facts offered to justify the seizure of essentially all of Harbor House's electronic devices is that "[w]hile waiting, law enforcement officers observed several employees accessing computers in the office adjacent to Bryan's office." (Def. Harbor House's Exs. 1 and 2, Aff. at ¶ 21.)  Defendants Bryan and Harbor House argue that the mere fact there are computers in the office adjacent to Mr. Bryan's office is insufficient to support a finding of probable cause to seize these electronic devices.

Defendant Pamela Meloney joined in Defendants Mark Bryan and Harbor House's motion to suppress.  [Docket Item 129.]  Defendant Meloney argues that she has standing to join the motion to suppress as to Harbor House, Inc., because she maintained a desk

and a computer in her work area and some personal property in or
about this area.  Defendant Meloney relies on several cases to
support her argument that in order to prove standing, a defendant
must demonstrate that she had a legitimate expectation of privacy
in the place searched or the items seized by showing an actual,
subjective expectation of privacy which society is prepared to
recognize.  See Minnesota v. Olson, 495 U.S. 91 (1990) and United
States v. Dickens, 695 F.2d 765, 777-78 (3d Cir. 1982).

The government filed opposition to Defendants Mark Bryan and
Harbor House's motion to suppress.  [Docket Item 132.][2]  The
government argues that Defendants Bryan and Harbor House's
request to suppress seized electronic evidence is both moot and
meritless.  First, the government contends that where a warrant
authorizes a search of a premises for a particular list of
records, the warrant should be read to authorize agents to search
a computer they encounter on the premises if they reasonably

---

[2] The government initially argued that this motion is
untimely because it is based primarily on the warrant and does
not rely on information from the lately disclosed affidavit.
Therefore, the government contends this motion should have been
filed within the original pretrial motion deadline.  As set forth
more fully on the record at oral argument, the Court found the
government's timeliness argument unpersuasive.  The discovery in
this case was voluminous and disclosed without an index.  In
addition, the government did not disclose the affidavit of the
special agent who executed the warrant until after the first
round of pretrial motions was already filed.  This is sufficient
to constitute good cause to allow these motions to be considered
by the Court on their merits, albeit within a few weeks of the
start of trial.

believe the warrant describes records that might be stored on that computer. <u>United States v. Giberson</u>, 527 F.3d 882, 887 (9th Cir. 2008); <u>United States v. Rogers</u>, 521 F.3d 5, 9-10 (1st Cir. 2008).

The government argues that the special agents had the requisite reasonable belief to seize the computers. The agents interviewed Defendant Bryan and during that interview, Defendant Bryan asked a subordinate employee to retrieve certain documents for the agents. The agents then observed Harbor House employees using computers in the office adjacent to Bryan's and afterwards, the documents were provided to the agents. Therefore, the government maintains that the agents had a reasonable belief that the Defendants' computers contained the records which were the subject of the warrant.

In the alternative, the government argues the agents acted in good faith in seizing the computers and therefore, the evidence retrieved from the computers should not be suppressed. Further, the government argues that the computers themselves were in plain view during the execution of the search warrant and the government was authorized to view the files to determine whether they were incriminating. The government relies on <u>United States v. Stabile</u>, 633 F.3d 219, 241 (3d Cir. 2011)(holding that the plain view doctrine applies to seizures of evidence during searches of computer files but the exact contours of the doctrine

10

will vary from case to case in a common-sense, fact-intensive manner).

In addition, the government argues that Defendant Pamela Meloney lacks standing to assert a Fourth Amendment claim and therefore should not be allowed to join in this motion. The government maintains that Meloney has not put forth evidence that she had a reasonable expectation of privacy in the business records of Harbor House seized during the search warrant and therefore, the Government contends she does not have standing to assert a Fourth Amendment Claim.

The government also argues that Defendant Bryan does not have a reasonable expectation of privacy in the seized records. The government argues that the records seized were not personal to Bryan in nature and therefore, there is no reasonable expectation of privacy. The government maintains that there is no evidence Bryan locked his office when it was not in use or that he regularly took any efforts to exclude access to his office by others. All of the files on the computer in Bryan's office were not personal because his computer was part of a network and was not password protected. The government relies primarily on O'Connor v. Ortega, 480 U.S. 709 (1987); Mancusi v. De Forte, 392 U.S. 362, 368 (1968); Anderson v. Ortega, 154 F.3d 1225, 1231 (10th Cir. 1998); Lagow v. United States, 159 F.3d

11

245, 246 (2d Cir. 1946) in support of its opposition.[3]

Defendants Bryan and Harbor House filed a reply to the government's opposition. [Docket Item 133.] These defendants maintain that the pre-2007 electronic documents seized should be suppressed because these documents were not within the scope of the warrant and did not fall into the plain view exception because the incriminating nature of any pre-2007 document was not immediately apparent. Specifically, these defendants argue that a given document pertaining to "oyster sales" for a year other than 2007 without more does not establish probable cause to associate that document with criminal activity.

**B. Standard of Review**

The Fourth Amendment provides "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, and no Warrants shall issue but upon probable cause, supported by Oath or Affirmation and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

A defendant must have standing to challenge the execution of

---

[3] During oral argument, the court also addressed the issue of the government's seizure of one physical pre-2007 document from Harbor House's premises. Since an exact copy of this document [Bates Nos. Y 011139-76] was ultimately provided to the government by the Defendants in response to a grand jury subpoena, the court held that this issue was moot and the document, provided through subpoena, may be used at trial.

a warrant under the Fourth Amendment.  The Third Circuit has

explained "Fourth Amendment standing requires that the individual

challenging the search have a reasonable expectation of privacy

in the property searched . . . and that he manifest a subjective

expectation of privacy in the property searched." United States

v. Correa, 653 f.3d 187, 190 (3d Cir. 2011)(citing United States

v. Kenney, 638 F.3d 159, 163 (3d Cir. 2011).  This requires

satisfying both an objective and subjective prong.  Specifically:

> Regarding the objective prong, "we inquire whether the
> individual's expectation of privacy is 'one that society
> is prepared to recognize as reasonable.  Regarding the
> subjective prong, "we ask whether the individual, by his
> conduct, has exhibited an actual expectation of privacy;
> that is, whether he has shown that 'he [sought] to
> preserve [something] as private.'"

Id. (citing Bond v. United States, 529 U.S. 334, 338 (2000).

In addition, a warrant must describe the items to be seized

with particularity and may not be general.  The prohibition

against general warrants stems directly from the text of the

Fourth Amendment to the Constitution, which requires that all

warrants describe "particularly . . . the place to be searched,

and the persons or things to be seized." As interpreted by the

Supreme Court, this language prohibits a "'general, exploratory

rummaging in a person's belongings.'" Andersen v. Maryland, 427

U.S. 463, 480, 49 L. Ed. 2d 627, 96 S. Ct. 2737 (1975) (quoting

Coolidge v. New Hampshire, 403 U.S. 443, 467, 29 L. Ed. 2d 564,

91 S. Ct. 2022 (1971)). "The particularity requirement 'makes

general searches . . . impossible and prevents the seizure of one thing under a warrant describing another.'" <u>United States v. Christine</u>, 687 F.2d 749, 752 (3d Cir. 1982) (quoting <u>Marron v. United States</u>, 275 U.S. 192, 196, 72 L. Ed. 231, 48 S. Ct. 74 (1927)).

The terms of an affidavit and warrant "'must be tested by courts in a common sense and realistic fashion.'" <u>Christine</u>, 687 F.2d at 760 (quoting <u>United States v. Ventresca</u>, 380 U.S. 102, 108, 13 L. Ed. 2d 684, 85 S. Ct. 741 (1965)). The scope of the search and seizure is to be measured "against the ambit of probable cause established by the affidavit upon which the warrant issued." <u>In re Impounded Case (Law Firm)</u>, 840 F.2d 196, 200 (3d Cir. 1988).

The Supreme Court has explained:

> In searches for papers, it is certain that some innocuous documents will be examined, at least cursorily, in order to determine whether they are, in fact, among those papers authorized to be seized. Similar dangers, of course, are present in executing a warrant or the "seizure" of telephone conversations. In both kinds of searches, responsible officials, including judicial officials, must take care to assure that they are conducted in a manner that minimizes unwarranted intrusions upon privacy.

<u>Andersen v. Md.</u>, 427 U.S. 463, 482 n.11 (1976).

**C. Analysis**

**1. Standing**

It is undisputed the Fourth Amendment protection against unreasonable searches and seizures extends to commercial property

14

and a person's office.  Mancusi, 392 U.S. at 367.  Several
circuits have held that an employee has standing to challenge the
seizure of work-related documents if the employee has a
relationship or nexus to the area searched.  United States v.
Mohney, 949 F.2d 1397, 1403-04; United States v. Chuang, 897 F.3d
646, 649-51 (2d Cir. 1990); United States v. Britt, 508 F.2d
1052, 1056 (5th Cir. 1975).  Further, while ownership does not
confer automatic standing, "property ownership is a factor to be
considered in determining whether an individual's Fourth
Amendment rights have been violated."  Anderson, 154 F.3d at
1231.

     The government cites to several cases in support of its
argument that Defendant Bryan and Defendant Meloney do not have
standing to contest the search of their business premises.  The
court finds that the government primarily relies upon two cases,
namely Anderson and O'Connor.

     In Anderson, the Tenth Circuit held that an employee has
standing to challenge the search of a room in his office building
even though the employee entered the office building during a
holiday weekend and the room was not his office.  154 F.3d at
1230-31.  The defendant was the subject of an FBI sting operation
to identify and prosecute members of an online club who were
involved in trafficking child pornography.  Id. at 1227.  FBI
agents observed the defendant pick up a package which the

defendant was led to believe contained child pornography.  Id.
The defendant then drove with the package to his corporate office
building where he worked as Vice President of the corporation.
Id.  The FBI then entered the building and found the defendant in
a vacant conference room with the tapes.  Id. at 1228.  Prior to
the arrival of the FBI, the defendant closed the door to the
conference room and drew the curtains to block any view into the
room from the window.  Id.

The Tenth Circuit held that the defendant had a reasonable
expectation of privacy in the vacant conference room even though
the room was not his office and the door was not locked.  The
court first noted that there is a great variety of work
environments and therefore the issue of whether an employee has a
reasonable expectation of privacy should be addressed on a case
by case basis.  Id. at 1229.  The court recognized that "an
employee enjoys a reasonable expectation of privacy in his work
space.  Certainly, an employee should be able to establish
standing by demonstrating he works in the searched area on a
regular basis."  Id. at 1230.  The court also recognized that
property ownership, while not dispositive, is an important factor
to consider when evaluating whether a person has a reasonable
expectation of privacy.  Id. at 1231.

While the defendant in Anderson did not work in the vacant
conference room on a regular basis and did not have a possessory

16

interest in the conference room, the Tenth Circuit looked to other factors to determine whether the defendant had a reasonable expectation of privacy.  First, the court noted that the item seized was the defendant's personal item and that he was present the time of the search.  The tapes were also in the immediate control of the defendant when they were seized.  Finally, the defendant also took steps to maintain his privacy in the item. The court reasoned that the defendant went to the corporate office on a holiday weekend when no other employees were present, closed the door and shut the blinds.  All of these factors indicated an intent to exclude others from the room and maintain privacy therein.  Therefore, the Tenth Circuit held that the defendant, while not having a business nexus or possessory interest in the conference room, had a reasonable expectation of privacy and consequently had standing to challenge the government's search under the Fourth Amendment.  Id. at 1232-33.

In O'Connor, the Supreme Court held that individuals do not lose their Fourth Amendment rights merely because they work for the government instead of a private employer.[4] 480 U.S. at 717. The Supreme Court found that a public employee, like a private employee, had a reasonable expectation of privacy in his office and desk.  First, the Supreme Court recognized that while many

---

[4] It is undisputed that Harbor House, Inc., is a private corporation and Defendants Bryan and Meloney are not public employees.

public offices are continually open to visits from fellow
employees and the general public, this does not foreclose Fourth
Amendment protection and the issue of whether an employee has a
reasonable expectation of privacy should be addressed on a case
by case basis. Id. at 717-18.

In looking at the facts of that particular case, the Supreme
Court noted that the public employee did not share his desk or
file cabinets with any other employees. In addition, this public
employee occupied this workspace for seventeen years and kept
personal items as well as work materials in his office. Id. at
718. Therefore, the Supreme Court held that the public employee
had a reasonable expectation of privacy in his office. Id. at
719.

These two cases relied upon by the government are not
dispositive of the issue of whether Defendants Meloney and Bryan
have standing to challenge the search of Harbor House premises,
specifically the search of Meloney's computer which was located
on Meloney's desk. Indeed, these cases emphasize that the issue
of whether an employee has a reasonable expectation of privacy
must be addressed on a case by case basis. Therefore, the Court
must look closely at the facts presented in this case and
evaluate whether the facts support a finding that Meloney or
Bryan have standing under the Fourth Amendment.

The Court finds both Meloney and Bryan have standing to

challenge the search of the Harbor House premises.  First, Bryan
is a co-owner of Harbor House and Defendant Meloney worked
directly for Bryan and was his personal assistant.  As co-owner
of the corporation, Bryan had an ownership and possessory
interest in Meloney's workplace computer and as Meloney's direct
supervisor, he had a reasonable expectation of privacy in the
work she completed on the computer at his direction.  Therefore,
the court finds that Defendant Bryan has standing to challenge
the search of Harbor House's premises.

Defendant Meloney also has standing to challenge the search
of her computer.  Though Meloney did not have a private office
and her workspace was in a common area, is not conclusive of
whether Meloney had an expectation of privacy in this area.  The
area searched was Meloney's personal desk and workspace where she
worked for more than ten years.  She did not share this desk,
computer, and workspace with other employees.  Other employees
did not use her computer or her desk to complete their work.
Meloney also kept personal items on her desk in her workspace.

The Supreme Court has clearly held that even where a
person's workspace is located in a room shared with others, the
person's expectation of privacy in their own desk and files is
not diminished.  See Mancusi, 392 U.S. at 369 (holding that a
union officer has a reasonable expectation of privacy in his
workspace which was located in one large room which was shared

with several other union officials and therefore had standing to successfully challenge the warrantless search therein).  Here, the court is satisfied that the area searched was Meloney's personal workspace which she did not share with other employees and was used as her workspace on a regular basis for more than ten years.

In addition, Meloney's computer was password protected. While her password was commonly known at the work place among her fellow employees, it was not known to the public and could not be accessed by anyone outside this small, closely held corporation. This is sufficient to show her intent to exclude members of the public and maintain privacy in the documents kept on her computer, an expectation shared with the business owner.  The electronic documents were retrieved from Meloney's "My Documents" folder and it is unclear from the record whether this folder was part of the network or an independent folder on Meloney's desktop.  However, these documents were found on Meloney's computer and there is no evidence that these documents were found in any of the other computers searched by the government.  This leads to the conclusion that the "My Documents" folder was not part of the general corporate network.  While Meloney's standing is a closer question than Bryan's, the court is satisfied that society would recognize that Meloney has a reasonable expectation of privacy in her personal workspace and that subjectively,

20

Meloney intended to keep her workspace private as she did not share or allow others to use her desk or computer.

Therefore, both Meloney and Bryan have standing to challenge the execution of the search warrant at Harbor House.

### 2. Was the search reasonable?

Finally, the issue of whether Harbor House's computers were properly searched for pre-2007 documents and whether these pre-2007 documents were then properly seized was addressed at oral argument and the court took the testimony of James Cassin, Jr., who was the special agent who conducted the search of the Harbor House computers.

There are two separate issues argued by the parties with regard to the scope of the warrant and the reasonableness of the search. First, there is the issue of whether the affidavit sets forth sufficient facts to support a finding of probable cause to search Harbor House's computers. The second issue is whether Special Agent Cassin violated the scope of the warrant by conducting a search of Harbor House's computers which was not limited in date.

On February 9, 2009, the Honorable Mary Pat Thynge, U.S. Magistrate Judge in the District of Delaware, signed the search warrant authorizing the search of Harbor House Seafood in Seaford, Delaware.

The language of the warrant states: "All records,

21

electronic or hard copy, from January 1, 2007 through December
31, 2007 related to the acquisition, landing, sale and transport
of oysters" may be seized.  (Govt's Ex. 3 at Ex. B-2 ¶ 1.(a)).
The affidavit supporting the search warrant submitted by James
Cassin, Jr. further mentions instances of alleged criminal
conduct by Defendant Harbor House in 2007 and does not provide
any evidence of criminal conduct before 2007.

After reviewing the affidavit and hearing the arguments of
the parties, the Court concludes that there are sufficient facts
in the affidavit to support Judge Thynge's finding of probable
cause to search Harbor House's computers.  Special Agent Cassin's
affidavit states that during an interview with law enforcement
agents, Mark Bryan instructed an employee to retrieve sales
records for the agents for the previous month's purchases of
oysters from Reeves Brothers' vessels.  The law enforcement
agents then observed several employees accessing computers in the
office adjacent to Bryan's office.  This is sufficient to support
a finding of probable cause to search Harbor House's computers
for electronic oyster records.

However, the Court finds the government's broad
interpretation of the 2007 date restriction in the warrant
unpersuasive.  The government maintained at oral argument that
the warrant authorized the special agents to search for all
documents related to 2007 oyster sales and all documents that

22

could have been accessed in 2007, i.e., pre-existing documents including the two documents from 2003 and 2004 that are at issue here.  The government conceded that the two documents at issue were created in 2003 and 2004 and last modified in 2004 and that they reflect only 2004 oyster transactions.  However, the government argues that since the documents were last accessed in 2009, even though the documents were not changed or modified in any way since 2004, this means the documents could have been accessed by Harbor House employees in 2007.  Therefore, the government argues this is sufficient to properly consider them as 2007 documents under the warrant.

This argument misinterprets the language of the warrant. The warrant explicitly states agents were only authorized to search for records **"from January 1, 2007 through December 31, 2007 related to** the acquisition, landing, sale and transport of oysters."  (Govt's Ex. 3 at Ex. B-2 ¶ 1.(a))(emphasis added). This language limits the warrant to documents created or modified in the 2007 calendar year which relate to oysters.  To interpret this explicit limiting language of the warrant to include any document that could have been accessed in 2007 would result in subjecting countless documents to government intrusion based on nothing more than speculation and would render the express date restriction in the warrant meaningless.  This would result in broadening the scope of the warrant beyond the affidavit without

23

probable cause.  The Court's narrower interpretation of the warrant to include only documents created or modified in 2007 is further buttressed by the accompanying affidavit of Special Agent Cassin.  Cassin's affidavit is limited to the discovery of alleged criminal activity that occurred in the calendar year 2007 and does not mention 2003, 2004 or any pre-2007 years.  Accordingly, the language of the warrant properly limits the search to documents created or modified in the 2007 calendar year.  If the court were to interpret the language of the warrant as the government posits, then the resulting overly broad warrant would be unsupported by probable cause, lack particularity and thus be void.

Despite this clear date restriction, Special Agent Cassin testified that he searched all the files on Harbor House's computers based on keywords such as "oysters" and "Reeves."[5] This brought up the two documents from 2003 and 2004, among hundreds of other documents, which the government seeks to introduce into evidence.  Special Agent Cassin testified that he had the warrant when he searched the computers and was aware that the warrant limited his search to 2007 documents.  However,

---

[5] The contents of the computers were imaged and seized when the agents executed the search warrant at the Harbor House premises, but the computer's files were not actually examined until several months later.  The agents thus had ample opportunity to plan and conduct a forensic examination of the computer's files that would not exceed the warrant's restrictions.

Special Agent Cassin testified that he did nothing to limit his search of Harbor House's computers to 2007 documents.

In particular, Special Agent Cassin testified that he had the ability to limit his search to the calendar year 2007 and search for documents that were created and modified in 2007. He also had the ability to search for the year "2007" or "/07," etc., in the body of the documents using a keyword search. Special Agent Cassin, however, testified that he did nothing to so limit his search and instead searched all the files on the Harbor House computers without regard to their date. Specifically, Special Agent Cassin disregarded the scope of the warrant by engaging in broad keyword searches of all the electronic files on the computers.

This is unreasonable and violates the Fourth Amendment. It is evident that Special Agent Cassin took no efforts to comply with the temporal scope of the warrant and disregarded the express date limitation contained therein. Special Agent Cassin did not conduct his search in a manner that minimized unwarranted intrusions upon privacy and his broad keyword search was more akin to "'general, exploratory rummaging" in Harbor House's computer files rather than a particular search in accordance with the express limitations of the search warrant. Andersen v. Maryland, 427 U.S. at 481. If the government felt they had enough probable cause to justify a search of Harbor House

25

computers for all documents related to oysters and the Reeves
Brothers, which is essentially what the government did, then the
government needed to re-apply for a new warrant or put forth
sufficient probable cause for such a broad search in their
initial application.  The government did neither in this case and
thus their search is unreasonable as to the pre-2007 documents.

The government's reliance on United States v. Stabile, 633
F.3d 219, 241-42 (3d Cir. 2011) is misplaced.  In Stabile, the
government inadvertently found child pornography files on the
defendant's computer while searching the computer for evidence of
financial fraud.  The discovery of the child pornography was
inadvertent and immediately apparent due to the lurid names of
the electronic files.  Such files containing child pornography
were in plain view of the searching agents and could thus be
seized as evidence of crime.

The instant action is clearly distinguishable.  There was no
inadvertence by the government in finding the 2003 and 2004
incriminating documents at issue here.  These documents would not
have been retrieved if the search was limited pursuant to the
terms of the search warrant which only authorized the government
to search for documents created or modified from January 1, 2007
to December 31, 2007.  The discovery of these two 2003 and 2004
documents was the result of the government's overly broad keyword
search.  Nothing was apparent on the face of the file names that

26

these documents were incriminating.  Likewise, the electronic descriptors of the creation and modification of these subject documents, revealing dates created, modified and accessed, disclosed no activity in 2007; although a glance at these electronic descriptors, which are labeled "File Comments" (reproduced at the first pages of Exs. G-2 and G-3) would have revealed that these documents were not created, modified or accessed in 2007, Special Agent Cassin testified that he did not use the "File Comments" information in conducting his search through the computer's files, and he thus missed this further opportunity to limit his computer search to the warrant's temporal scope.  It was only after Special Agent Cassin reviewed the contents of the documents and compared the actual <u>contents</u> of these documents to information he already knew about the amount of oysters harvested in 2004 that these documents became incriminating.[6]  These documents cannot be argued to be of the

---

[6] The Court also rejects Special Agent Cassin's testimony that the incriminating nature of the two 2003 and 2004 documents was instantly apparent to him, because they exhibited quantities of oysters that were at variance from the known quantities that had been reported to New Jersey State inspectors on dates in 2004 with which he was familiar.  In fact, the documents are plainly from 2003 and 2004, and the year 2004 appears, in some form, at least 8 times on each short document.  There was no "inadvertent discovery" of this evidence because the search should have stopped and proceeded to look for the next 2007 oyster documents when it was readily apparent these documents concerned only 2004, not 2007.  In a warrant that was carefully linked to documents created or modified in 2007, it was not reasonable to continue searching a document that was manifestly from 2003 and 2004.

same lurid and immediately incriminating nature as the documents in <u>Stabile</u> nor can they be said to have been found inadvertently by the government; they should not have been examined at all under the warrant and the circumstances that limited the search to 2007 documents.  They were found because the searching agent, in executing the warrant, examined documents that on their face were not 2007 documents.

Therefore, the court finds the government's search of Harbor House's computers unreasonable and violative of the Fourth Amendment to the extent that these pre-2007 documents were examined without reasonable safeguards to comply with the warrant's temporal restriction.  Accordingly, all pre-2007 documents seized from this search will be suppressed.

**IV.  CONCLUSION**

For the reasons discussed herein, Defendants Bryan, Harbor House and Meloney's motion to suppress the seized pre-2007 electronic documents will be GRANTED.

The accompanying Order will be entered.


**May 17, 2012**                              **s/ Jerome B. Simandle**
Date                                          JEROME B. SIMANDLE
                                              Chief U.S. District Judge

28